## SUPREME COURT.

WILLIAM J. HUTCHINSON agt. FREDERICK N. LAWRENCE, president of the New York Stock Exchange.

*Stock exchange membership — Proceedings for expulsion — Rights of member — Courts authorized to interfere for the purpose of seeing that the rules of such association are fairly and honestly administered.*

In every proceeding before a club, society or association, having for its object the expulsion of a member, the member is entitled to be fully and fairly informed of the charge and to be fully and fairly heard. The plaintiff, a member of the New York Stock Exchange, an incorporated voluntary association, having been charged by a special committee of investigation, after taking voluminous testimony, with being guilty of improper practices, the governing committee of the exchange, who are empowered by its constitution to expel members adjudged to have

been guilty of obvious fraud, preferred charges against him based upon the testimony thus taken. He was permitted to make statements and explanations before the investigating committee, and to cross-examine the witnesses produced. Then he appeared before the governing committee and read his defense at great length. At a subsequent meeting on June sixth, in his absence, two accusing witnesses were examined by the governing committee, who then negatived a proposition that these witnesses be brought again before them to be cross-examined by the accused member:

*Held, first,* that though the governing committee is not bound on the trial of a member for misconduct by the ordinary rules which obtain in judicial proceedings, yet the court should interfere for the purpose of holding the association to a fair and honest administration of its rules.

*Second.* The action of the governing committee on June sixth was not just or fair to the accused member in either a legal or equitable sense, and defendants should be restrained pending the action from asserting against plaintiff the resolution of expulsion passed upon him.

*N. Y. Chambers, March,* 1884.

*Joseph H. Choate* and *Robert Sewell,* for plaintiff.

*James C. Carter, Stephen P. Nash* and *Julien T. Davies,* for defendants.

LAWRENCE, *J.* — It was held by the general term of the court of common pleas, in the case of *White* agt. *Brownell* (2 *Daly,* 329), that as the privilege of membership of a voluntary unincorporated association is not conferred by the sovereign power, but is created solely by the organization itself, courts of law cannot compel the admission of an applicant for membership, nor interfere to restore to membership one who has been expelled for non-compliance with the conditions upon which membership is made to depend; that the members of such an association are bound by its rules, when not in conflict with the law of the land, and that the courts can interfere no further than to hold the association to a fair and honest administration of those rules; also that, therefore, to warrant the granting of an injunction to restrain the officers of a voluntary unincorporated association from carrying

into effect a resolution or vote suspending a member from the privileges of the association it must appear that the suspension was in violation of the constitution, rules or by-laws, for unless they were violated by the proceedings against him he could have no ground of complaint. It was also held by the special term of this court, in the case of *Olery* agt. *Brown* (51 *How. Pr.*, 92), that where there is open to an expelled member of a voluntary association a remedy under its constitution and laws for a review of the proceedings for his expulsion, and, in case of error, for his restoration, and the association is not a partnership, equity will not interfere.

The New York Stock Exchange is an unincorporated voluntary association, but the seats therein are worth in cash, as shown by the affidavits in this case, at least $30,000, and the privileges attaching to membership in the board are of great value. The twentieth article of the constitution provides as follows :

" Members guilty of obvious fraud : Should any member be guilty of obvious fraud, of which the governing committee shall be the judge, he shall, upon conviction thereof by a vote of two-thirds of said committee present, be declared by the members to be expelled, and his membership shall escheat to the exchange."

By the second article of the constitution the government of the exchange is vested in the governing committee, composed of the president and treasurer of the exchange and of forty members elected as therein provided. The plaintiff in this case claims that he has been illegally and unfairly expelled from the stock exchange, and he has obtained an injunction that the said exchange, and the president and officers thereof, show cause why during the pendency of this action, and until final judgment is entered therein, they should not be enjoined and restrained from excluding the plaintiff from the said exchange, and from asserting against him the resolution of expulsion passed upon him, and from interfering with the exercise and enjoyment by him of his rights and privileges as

Hutchinson agt. Lawrence.

a member of the said exchange, and with the transaction by him of his business in the said exchange as a member thereof, and from transferring or disposing of his seat or membership in the said exchange, and from excluding him from or interfering with the exercise by him of the right to vote at any election of officers of the said exchange, or at any other meeting thereof. The order contains, also, a clause for a temporary injunction until the hearing and determination of the motion to be made under such order. The plaintiff claims that while it is not within the power of a court of law or equity to retry the question on its merits as to whether a member of the stock exchange has been properly expelled, he is entitled to the decision of the court upon the question whether he has been fairly treated according to the constitution which he has signed and agreed to observe, and according to the rules of natural justice and fair play, which ought to regulate all proceedings, judicial in their character, which are not exercised by a court vested with full judicial powers, but by a body selected by the agreement of the parties.

The defendant claims that the rules applicable to proceedings in ordinary courts of justice have no application to proceedings of this character, and that the trial contemplated by the constitution of the stock exchange is one to be had before the governing committee of that body, according to such methods as it may choose to pursue, subject, however, to the conditions that this committee must exercise the authority conferred upon it honestly and in good faith, and that they must afford to the accused party a full and fair opportunity to defend himself. I think that, under the decisions to which I have already referred, it must be conceded that the governing committee of the stock exchange is not bound, on the trial of a member for misconduct involving his suspension or expulsion, by the ordinary rules which obtain in judicial proceedings; but it is equally obvious, from the opinions rendered in those cases, that the courts are authorized to interfere for the purpose of holding the association to a fair

and honest administration of its rules, and that the association must act fairly and in good faith. The case of *White* agt. *Brownell* (*supra*) seems to have rested in some measure upon the ground that in that case under the constitution and by-laws of the Open Board of Stock Brokers, an appeal could be taken from the decision of the committee on membership to the executive committee; and chief justice DALY, in his opinion, says: " The plaintiff could have appealed from their decision (the committee on membership), if it were erroneous or unjust, to the board of appeals, and he should have resorted to the remedy provided for him within the board before he could ask a court of equity to interfere, upon the ground that an arbitration committee were prejudiced against him."

In the case now under consideration there is no appeal from the decision of the governing committee, and if the proceedings of the committee were fair and honest, and the members thereof were not actuated by bias, prejudice or partiality, their judgment must be deemed to be conclusive upon the rights of the plaintiff. It is stated in the brief of the learned counsel for the defendant that the excepted case in which judicial tribunals will interfere with or review the proceedings of voluntary unincorporated associations in the matter of the expulsion of members cannot, perhaps, be better stated than by saying that where the proceedings resulting in the expulsion of a member are contrary to natural justice a court of equity may interfere. I am inclined to think that this is a correct statement of the rule. Now, in this case it appears that the plaintiff had been a member of the exchange for several years prior to the proceedings instituted against him; that rumors sprang up affecting his reputation for integrity and fidelity, and that publicity having been given to these rumors by an article published in one of the newspapers the plaintiff requested that the exchange should make an investigation. A committee of investigation was accordingly appointed, which made an examination extending over a period of several weeks. The plaintiff appeared before that committee, his books were

Hutchinson agt. Lawrence.

examined, and he was permitted to make statements and explanations in regard thereto. The privilege was accorded to him of cross-examining the witnesses produced before the investigating committee. At the first meeting of the committee on the 4th of April, 1882, it was stated that the plaintiff could not be present, but desired the committee to proceed in his absence. At the meeting of April twenty-eighth, Mr. Duff, the party alleged to have been defrauded by the plaintiff, appeared before the committee, and the plaintiff was present at that meeting. Duff stated that he was willing to answer any questions put to him by the committee, but declined to answer certain questions that were put to him by the plaintiff, which questions are alleged not to have had any material bearing upon the points in controversy, and not to have been insisted on by the plaintiff. It is also alleged by the defendants that the plaintiff never claimed that the sub-committee, or the governing committee, should disregard the whole or any part of the evidence of Duff by reason of his refusal to be cross-examined ; also, that the plaintiff requested to be excused from the meeting at which Duff was to appear for the second time, and reluctantly consented so to appear upon Lummis urging him. The plaintiff called no witnesses before the investigating committee or special committee of inquiry, and at a meeting of the governing committee of the stock exchange, held on the 5th day of May, 1882, Mr. Lummis, in behalf of the special committee, reported the result of their labors " after a number of protracted meetings, with voluminous stenographic notes of testimony had before them." It is stated in the minutes of that meeting that the report of the special committee was read to the governing committee in full, and that said report gave at great length the history of their examination of witnesses and into the books, papers and correspondence of the firm of Kennedy, Hutchinson & Co.; that it also gave an exhaustive review of the testimony and charges therein made, and their findings, and that the committee had concluded that from this investigation they had no

alternative but to report that in the management of the accounts of John R. Duff, William J. Hutchinson and George H. Kennedy, comprising the late firm of Kennedy, Hutchinson & Co., were unfaithful to the trust reposed in them and guilty of improper and illegal practices. This report was signed by Messrs. Lummis, Eames and Alexander. Mr. J. S. Stout also signed the report, adding that "while assenting generally to the report of this committee, I am of the opinion that a certain proportion of the transactions complained of in this case were covered by a full power given by Mr. Duff, and were not committed with the intention of doing him injustice." Mr. S. V. White, the remaining member of the sub-committee, as appeared by the report of the governing committee, attended only two meetings, and was therefore not able to join in the report. The report of the sub-committee was duly accepted by the governing committee. It was then moved and resolved that, in order that all the members of the governing committee might become acquainted with the remaining voluminous report of testimony presented by the sub-committee, the further consideration thereof be postponed to a special meeting, to be held a week from next Wednesday, the seventeenth, at which this shall be the only business heard, and meanwhile the report of testimony be left in the secretary's office, open to the inspection only of the members of the governing committee. On the 17th of May, 1882, the following resolution was passed by the governing committee :

"*Resolved*, That in the management of the account of John R. Duff, W. J. Hutchinson and George H. Kennedy, composing the late firm of Kennedy, Hutchinson & Co., were unfaithful to the trust reposed in them and were guilty of improper and illegal practices, and apparently of obvious fraud, and that charges will promptly be preferred against them under article 20 of the constitution of the exchange."

It was also resolved that the committee appointed to investi-

Hutchinson agt. Lawrence.

gate the conduct of Messrs. Kennedy, Hutchinson & Co., jointly with the law committee, be instructed to immediately prepare charges, under the resolutions as adopted, against Messrs. W. J. Hutchinson and George II. Kennedy, and report at a meeting to be held two weeks from to-day; and that the parties therein mentioned be notified to appear before this committee at that time and answer such charges.

The secretary was directed to forward to Messrs. Hutchinson and Kennedy, immediately, the resolution expressing the opinion of the governing committee after considering the report of the special committee. On the twenty-fourth of May, on the request of the plaintiff, it was ordered that the special meeting of the governing committee appointed for the hearing on Wednesday, the thirty-first, should be postponed to the Monday following, and a motion to allow Hutchinson and Kennedy to appear with, and be defended personally by, counsel was lost. At a meeting held on the 5th of June, 1882, the special business was taken up, Mr. Hutchinson was called in, and the charge of obvious fraud in his dealings with and for the account of Mr. John R. Duff during several years ending December 31, 1881, and the nine specifications under said charge, were read to him and he was informed that each specification would be read in its order, when he could answer to them separately. He answered, denying each accusation in the specifications, and read his defense at great length from a document in his possession, which "he was asked to leave, but preferred to take away." The minutes also recite that, after answering numerous questions by members, he retired. The committee then adjourned until the next day. On the sixth of June the special business was resumed by reading documents received from Mr. Hutchinson, in answer to interrogatories at the last meeting, and Mr. Kennedy was called in. After he had retired Mr. Duff was called in, and after answering questions and "denying generally statements made by Mr. Hutchinson, he retired." Mr. J. H. Brouwer was also called in, and after answering

"some questions" retired. The minutes of this meeting do not state in full all that occurred, but reference is made in the secretary's minutes to the stenographer's notes of that meeting. From the stenographer's notes it appears that Mr. Lummis said that he did not know whether or not the committee desired any evidence to be given before them by parties other than those accused, but stated that others having knowledge of the facts were in attendance, both Mr. Duff and the members of the present firm of Kennedy, Hutchinson & Co., who were ready to be called if the committee desired. Mr. Bogart expressed a desire that Mr. Duff be called and questioned. He was called, whereupon his examination took place, amounting to about sixteen pages of the stenographic minutes. Thereupon Mr. Wilson moved that this committee now adjourn, and that it meet to-morrow afternoon, and that then the questions that had been asked Mr. Duff and the answers that have been made thereto by him be read to Mr. Kennedy and Mr. Hutchinson, and that they be allowed to answer the same. The motion was seconded. It was opposed by several members on the ground, principally, that what was proposed, if done, would be merely a repetition of what had already taken place before the sub-committee The motion was thereupon withdrawn. Mr. Brouwer was then called in and examined at some length, his testimony extending from page 147 to page 154 of the stenographer's minutes. A resolution was then offered that this committee, having considered the evidence in the case of W. J. Hutchinson, who had been charged by this committee with obvious fraud, and having heard Mr. Hutchinson in his own defense, find him guilty of obvious fraud, as charged. The resolution was seconded and the ayes and noes called for, arguments having been made and the decisions of the courts referred to on the question of fraud. Mr. Alexander said: "I would like to have Mr. Duff brought here again and Mr. Hutchinson permitted to cross-examine him. I think it is an important point." Mr. Bogart: "I second the motion to do that." Mr. Mack and

Hutchinson agt. Lawrence.

others opposed the proposition of Mr. Alexander. Finally Mr. Alexander moved that the committee adjourn until half-past three of the following day; that Mr. Duff be requested to appear again at that time, and that Mr. Hutchinson be also summoned to appear and have an opportunity to examine Mr. Duff. This resolution was lost, and the vote was then taken upon the various specifications, and the charge was finally sustained.

It is apparent from the proceedings had before the governing committee that Hutchinson and Duff were never brought face to face before that committee, and that Hutchinson never had an opportunity of cross-examining Duff, or of calling upon him for any explanation in respect to any of the testimony which he gave before that committee. It is unnecessary for me in disposing of this motion to determine whether it would not have been competent for the governing committee, after Hutchinson had read his answer, to proceed immediately to vote upon the question of his expulsion. It may be conceded that they would have had the right to do so. But the examination of Duff and Brouwer after Hutchinson had retired was, to my mind, unjust and unfair to the latter, and I am of the opinion that under the decisions to which reference has been made — even confining the power of this court to interfere in proceedings of this nature, within the narrow rule conceded by the learned counsel for the defendant in their eighth point to be the true rule in such cases — a case is presented which calls for the interposition of the court.

When Hutchinson had read his answer, assuming that the members of the governing committee had read the evidence taken before the special committee of investigation, both sides had been heard, and if it was intended to take any further evidence, I think that the ordinary principles of justice and of right required that Hutchinson should have been allowed to be present to confront his accuser and to cross-examine him in respect to any evidence which he might give before the

governing committee, particularly in view of the fact that Duff had refused to be cross-examined by Hutchinson before the special committee, which consisted, it should be remembered, of but five members of the stock exchange. It seems idle to say that the re-examination of Duff, in the presence of the governing committee, did no harm to Hutchinson, and was but a repetition of what he had stated before the special committee of inquiry. The fact remains that Hutchinson, from the proceedings which had taken place, was justified in the conclusion that the investigation before the governing committee, so far as it related to the taking of evidence, was closed, and that he had been heard upon the evidence against him as it stood. This, too, clearly appears to have been the understanding of prominent members of the governing committee, who have made affidavits upon this motion. In the joint affidavit of Messrs. Lummis and Eames, those gentlemen state that they believe it was the understanding, both of the plaintiff and of the governing committee, that there was no necessity for any further taking of testimony in connection with the case of the plaintiff, and that nothing stood in the way to prevent a final vote being taken on the charge and specifications after plaintiff had read his defense on the 5th day of June, 1882. That on that day the plaintiff read a long, elaborately written answer to the charge and specifications; that he did not deny in that defense the particulars of the facts set out in the charge and specifications, but he denied the conclusions that he had been guilty of fraudulent conduct, and based his defense upon the same view and assertions that he had previously advanced before the sub-committee of inquiry, to wit, that all these questionable transactions had been either authorized by Mr. Duff or subsequently ratified by him; that his written defense proceeded upon the view that the proofs taken by the sub-committee, the minutes of evidence taken by the entries in the books and telegrams and letters of John R. Duff were before the governing committee as evidence against him in support

of the charge and specifications. That numerous questions were put by members of the committee to the plaintiff on the 5th day of June, 1882, and discussions were had between the plaintiff and members of the committee in which allusions were made, both by them and him, to the testimony taken before the sub-committee and to the facts proved before them and established by the proofs and plaintiff's books and by the reports of the sub-committee ; that the plaintiff never asked, suggested or intimated that he wanted to adduce new or additional proof before the governing committee, or that he supposed any new or additional proofs were to be adduced. It is also stated in the affidavit of Messrs. Lummis and Eames that Kennedy was called in his own defense, and that the only other persons that were permitted to appear were John R. Duff and George H. Brouwer, and that they gave no testimony different in substance and general effect from that which had already been given before the sub-committee in the presence of the plaintiff ; that the purpose of permitting Duff and Brouwer to appear before the governing committee — as that purpose appeared and from what was said by members of the governing committee — *was to receive from them directly the statements that the sub-committee had already received from them and others,* and that the reason why the motion to adjourn with a view of calling these witnesses again and allowing the plaintiff to appear and cross-examine them was voted down was, that it did not appear to be reasonable or called for, upon any consideration of fairness, that the time of the governing committee should be taken up with a repetition of the testimony that had been had before the sub-committee and the proceedings that had been had before the sub-committee in the presence of plaintiff, or that the proposed course would lead to any material change in the aspect of the case. From this it would appear that there were members of the governing committee who were in doubt — after having read (assuming them to have read) the testimony of Duff and

Brouwer, reported by the sub-committee to the governing committee — as to the propriety of expelling Hutchinson upon that evidence. The members who voted for their further examination must be supposed to have had a motive in doing so, and it does not seem just or fair to have allowed those witnesses to appear and be examined in the presence of the committee, in the absence of the plaintiff, when, according to the affidavit just referred to, both he and the governing committee did not suppose that any new or additional proofs were to be adduced after he had been heard before the committee, and his books and the report of the sub-committee were under consideration by the governing committee. I do not think that the court is bound to take the opinion of the gentlemen who have made affidavits in this case, that Messrs. Duff and Brouwer gave no testimony different in substance and general effect from that which had already been given before the sub-committee. The testimony taken before the sub-committee has not been presented upon this motion. It is referred to in the papers as being very extensive, and it is stated that its perusal would require much time. That consideration, however, is of no consequence. The testimony, brief or extensive, must be before the court to enable it to determine whether it differed from the testimony given by Duff and Brouwer before the governing committee. The latter testimony is before me, and it is quite apparent from its perusal that that testimony may have had — and necessarily must have had — much weight and effect upon the minds of those members of the committee who were in doubt after having read the testimony before the special committee or after having heard what that testimony was. At page 143 of the stenographic minutes, Mr. Duff says: "I believe that Mr. Hutchinson has robbed me of $2,000,000." He also admitted that he was unwilling to be cross-examined before the sub-committee by Mr. Hutchinson. It was stated, however, that he was ready to answer before the sub-committee any question which that committee desired to put to him.

He was asked also if Mr. Hutchinson should be brought before the committee whether he would answer any questions that might be put to him by Hutchinson in the presence of the committee ; to which he answered, " Yes, sir, if it does not prejudice any of my other suits." He was also asked, in substance, whether he had been informed of the alleged improper transactions by Kennedy, Hutchinson & Co., and he answered, " no." He also said that they always made him bear the losses, but did not give him the profits. I repeat, that it is quite apparent that this testimony may have had — and must have had — great effect upon the members of the governing committee who had before been in doubt ; and it is also evident from this testimony that Mr. Hutchinson never had cross-examined Mr. Duff in respect to those matters. Upon turning to the testimony of Mr. Brouwer it will be seen that he stated that Duff was never in the habit of inspecting the purchase and sales books of Kennedy, Hutchinson & Co., and also that " we " (referring to the clerks and employes in Hutchinson's office) " were always told never to allow Mr. Duff to look at the books ; and when Mr. Duff would come to the desk where they were open, we would immediately close them." Brouwer also stated that instructions had been received to that effect from Mr. Hutchinson. It is stated, as we have before seen in the defendant's affidavits, that Mr. Hutchinson finally mainly rested his defense to the charge brought against him upon the fact that Duff had acquiesced in and ratified the transactions alleged to be fraudulent. It is impossible to conceive of testimony more weighty upon that subject than the testimony which Duff and Brouwer were allowed to give at the meeting of June 6, 1882; after, as has been shown by the affidavits of the defendants, the testimony to be adduced was considered closed both by the plaintiff and governing committee I do not mean to be understood as saying that the gentlemen who conducted the trial of Hutchinson were not actuated by the most honorable motives. I do not mean to be understood as saying that

Hutchinson was not guilty of the charge which was brought against him. But I cannot regard the proceedings which were had upon the 6th of June, 1882, at the meeting of the governing committee, as a fair and honest administration of the constitution and rules of the stock exchange in any legal sense. In this case there is no appeal from the decision of the governing committee, such as existed in the case of *White* agt. *Brownell* (2 *Daly*, *p.* 329–366). In that case the learned justice, while admitting that courts should be careful not to interfere in the proceedings of such associations, evidently was of the opinion that, if the proceedings were erroneous and unjust, the plaintiff, after having exhausted his right of appeal, could resort to a court of equity for relief. There have been many decisions in the courts in which proceedings analogous to those now under review have been the subject of consideration by eminent judges, and in all such cases it will be found that great stress is laid in the opinion of the court upon the sacred right of an accused party to be fully informed of the charge which has been made against him and to be fully heard in his defense.

In *Thorburn* agt. *Barnes* (2 *Common Pleas Law R.*, *p.* 401), a case relating to an award, WILLES, J., says : " It was certainly not put too high by Mr. Brett when he said that it is one of the first principles of justice that no man's rights shall be adjudicated upon without giving him an opportunity of being heard in support of them."

BAYLEY, baron, in *Capel* agt. *Child* (2 *Crompton & Jervis*, *p.* 558), said : " I know of no case in which you are to have a judicial proceeding by which a man is to be deprived of any part of his property, without his having an opportunity to be heard. There is the case of *The King* agt. *Benn & Church* (6 *Term Reports*, *p.* 198), in which, where a warrant of distress, which is in the nature of an execution, had issued, not grounded on a previous summons, lord KENYON laid it down most distinctly as an invariable maxim of our law, that

no man shall be punished before he has had an opportunity of being heard."

In *Wood* agt. *Woad* (*Law Reports, Exchequer, vol. 9, p.* 194), which was a case where the plaintiff alleged that he had been wrongfully and improperly expelled from a mutual insurance company, chief baron KELLY said : "This, then, is the great question in the case : Was the alleged act of expulsion void? It is contended for the plaintiff that the language of the rules gives an unconditional and absolute power to the committee to expel a member from the society, and I agree that if the committee in fact exercised their power under the rules their decision could not be questioned; however unfounded the reasons for it may have been, it would have been final and could not be reviewed by any court. But they are bound, in the exercise of their functions, by the rule expressed in the maxim — *audi alteram partem* — that no man shall be condemned to consequences resulting from alleged misconduct unheard and without having the opportunity of making his defense. This rule is not confined to the conduct of strictly legal tribunals, but is applicable to every tribunal or body of persons invested with authority to adjudicate upon matters involving civil consequences to individuals."

This case seems to be fully in point, inasmuch as it related to the expulsion of a member from a society attached to the membership of which were valuable rights and privileges.

Again, while these proceedings are not to be governed by the strict rules which apply to actions at law or suits in equity, or even, perhaps, by the rules which obtain in regard to arbitrations, there is, I think, a strong analogy between the principles which govern in arbitrations and those which relate to proceedings of this character. In the case of *Sharpe* agt. *Bickerdyke* (3 *Dow's Rep.*, 102), lord ELDON said that by the " great principle of eternal justice which was prior to all these acts of *sederunt* regulations and proceedings of court, it was impossible an award could stand where the arbitrator heard

one party and refused to hear the other; and on this great principle, and on the fact that the arbitrator had not acted according to the principles upon which he himself thought he ought to have acted, even if he decided rightly he had not decided justly, and, therefore, the award could not stand."

*In the Matter of Plews* agt. *Middleton* (6 *A. E., N. S.,* 845), an award was set aside because the three arbitrators, after having determined within a small amount the sum to be paid, agreed to examine a witness separately, and did so. COLERIDGE, J., in that case says: "To uphold this award would be to authorize a proceeding contrary to the first principles of justice. The arbitrators here carried on examinations apart from each other and from the parties to the reference, whereas it ought to have been conducted by the arbitrators and umpire jointly in the presence of the parties."

In *Oswald* agt. *Earl Grey* (24 *Law Journal, Q. B.,* 69) it was held that no usage can justify the arbitrators in hearing one party and his witnesses only, in the absence of and without notice to the other party.

In *Walker* agt. *Frobisher* (6 *Vesey,* 69) an award was set aside, the arbitrator having received evidence after notice to the parties that he would receive no more, in which they acquiesced. In this case lord ELDON says: "A judge must not take upon himself to say whether evidence improperly admitted had or had not an effect upon his mind. The award may have done perfect justice, but upon general principles it cannot be supported." This decision also seems peculiarly applicable to the averments contained in the joint affidavit of Messrs. Lummis and Eames, that the testimony given by Duff and Brouwer before the governing committee was not different in character or effect from that which these witnesses had given before the special committee of inquiry. Both of the affiants sat in judgment upon the plaintiff in this case, and it does not seem just or fair that they should take evidence in his absence, without notice to him, and determine that

Hutchinson agt. Lawrence.

that evidence had no force or effect in producing the final result.

In *Drew* agt. *Drew* (2 *Macqueen's House of Lords Cases, p.* 1) it was held "that an arbitrator greatly errs if he, in any of the minutest particulars, takes upon himself to listen to evidence behind the back of any of the parties to the submission (*See particularly remarks of Lord Chancellor Cramworth, at p.* 9).* In *Fisher* agt. *Keane* (11 *Chancery Division,* 353) it was held "that the committee of a club, being a *quasi* judicial tribunal, was bound, in proceedings under their rules against a member of the club for alleged misconduct, to act according to the ordinary principles of justice, and are not to convict him of an offense warranting his expulsion from the club without giving him due notice of their intention to proceed against him, and affording him an opportunity of defending or palliating his conduct; and that the court will, at the instance of any member so proceeded against, declare any resolution passed by the committee without previous notice to him, based upon *ex parte* evidence, and purporting to expel him from the club, to be null and void, and will restrain the committee, by injunction, from interfering by virtue of such a resolution with his rights of membership."

The principle to be deduced from all these cases is that in every proceeding before a club, society or association having for its object the expulsion of a member, the member is entitled to be fully and fairly informed of the charge and to be fully and fairly heard.

In this case Hutchinson was not heard after Duff and Brouwer had been called in to satisfy members of the governing committee who were in doubt, even after hearing the

---

* The recent case of *The National Bank of the Republic* agt. *Darragh* (30 *Hun's Reports, p.* 29), decided by the general term of this department, shows how rigidly courts have maintained the rule that arbitrators should receive no evidence after a cause had been submitted, which might by any possibility influence their award. —[ED.

Hutchinson agt. Lawrence.

report of the sub-committee and reading the testimony of Duff and Brouwer there given, after having heard Hutchinson's answer to the charge made in the report of the sub-committee. Various other questions were discussed upon the argument of this motion which I do not deem it necessary now to consider. It seems to me that the action of the governing committee of the stock exchange in examining Duff and Brouwer, after Hutchinson had retired, upon points so vitally affecting his character, reputation and property, was not just or fair to him in either a legal or equitable sense; that it was contrary to the rule which should obtain in all proceedings had in bodies such as the stock exchange, for the expulsion of members, and therefore I deem it my duty to continue the injunction heretofore granted until the cause can be tried (*See Wood* agt. *Woad, L. R.,* 9 *Ex.,* 190, *supra*).