NEUKIRCH v. KEPPLER.

(Supreme Court, Appellate Division, First Department. December 21, 1900.)

1. EXCHANGES—EXPULSION OF MEMBERS—ACTION FOR REINSTATEMENT.
    Where, in an action by plaintiff to compel his reinstatement as a member of a stock exchange after expulsion by the governing committee thereof on charges of fraud, it appeared that the merits were fully and fairly inquired into by such governing committee, reinstatement cannot be

ordered, since the judgment of such committee cannot be reviewed on the merits by the courts.

2. EVIDENCE—DOCUMENTARY—COMPELLING PRODUCTION—MATERIALITY—IN POSSESSION OF ATTORNEY IN COURT.

Where, in an action to compel reinstatement of a member of a stock exchange, expelled by the governing committee on charges of fraud, plaintiff served notice on defendant's attorneys to produce papers, and it appeared that some of the papers were actually in court in the possession of the defendant's attorneys, the court had authority to require their production, if shown to be material.

3. SAME.

Where, in an action to compel reinstatement of a member of a stock exchange, expelled by the governing committee on charges of fraud, plaintiff served notice on defendant's attorneys to produce papers, which were actually in court in their possession, it was not error for the court to refuse to compel their production, it not appearing that they were material to the case.

Appeal from special term, New York county.

Action by Charles Neukirch against Rudolph Keppler, as president of the New York Stock Exchange, for reinstatement as a member of the exchange, and for damage for his expulsion. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Geo. P. Hotaling, for appellant.

Lewis Cass Ledyard, for respondent.

PATTERSON, J. The plaintiff, a member of the New York Stock Exchange, was expelled from that body, his membership was forfeited, his right of membership sold, and the proceeds of the sale were paid over to him. Upon the receipt of such proceeds, he executed, under seal, an instrument in which, after an acknowledgment of the receipt of the money, he transferred his membership to another person, and relinquished "all his right, title, and interest as a member of the said New York Stock Exchange."

The expulsion of the plaintiff was the result of an investigation by the governing committee of the stock exchange, that being the appropriate tribunal, of certain transactions of the plaintiff for the firm of which he was a member, had upon the floor of the stock exchange, which transactions, it was claimed, were fraudulent. A written charge was preferred against the plaintiff, namely, that he was guilty of fraud,—the specifications of the charge being, in substance, that on the 30th of March, 1897, he procured, prepared, and furnished, or caused to be furnished, to certain other parties, facilities, means, or instrumentalities for the perpetration or concealment of frauds, or of fraudulent, dishonest, or criminal practices; that on or about March 30, 1897, he, on the request, or by the procurement, or for the account, of the E. S. Dean Company, or one Samuel Kellar, its agent, instructed and requested Herzoz & Sichel, a firm represented on the New York Stock Exchange, to make and deliver to the plaintiff or his firm a false, fraudulent, and fictitious report of the sale by Herzoz & Sichel, for account of the plaintiff's firm, certain stocks, naming them, at a certain fixed price, and that thereupon Herzoz & Sichel,

by the instructions and at the request of the plaintiff, delivered to his firm a false, fraudulent, and fictitious report of the transactions specified, and that none of the transactions mentioned in the report as having taken place did in fact take place, and that neither the plaintiff nor his firm intended that any of the transactions should be executed by Herzoz & Sichel; that after that report had been received by the plaintiff's firm, or by him, and on the same day, with the intent to procure a similar false and fraudulent report, which might be used by the plaintiff or his firm, and might by him or them be furnished to others, as a facility, means, or instrumentality for the perpetration or concealment of frauds, or fraudulent, dishonest, and criminal practices; that, Herzoz & Sichel refusing to carry out the transaction, the plaintiff, upon the request and procurement and for the account of the E. S. Dean Company, or one Samuel Kellar, its agent, requested and instructed another firm of brokers represented on the New York Stock Exchange to make and deliver to him, or to his firm, a false, fraudulent, and fictitious report of the sale by those other brokers, for account of the plaintiff's firm, of certain shares of stock, at certain fixed prices, and that, in pursuance of that instruction or request, the firm of brokers last referred to made and delivered to the plaintiff fraudulent and fictitious reports of transactions as specified in the request or instruction, being a report of the alleged sale by such brokers for account of the plaintiff's firm of the securities in such request mentioned; that none of the transactions mentioned in the report as having taken place did in fact take place, and that it was not intended that such transaction should be executed, and that after the last-mentioned report was received by the plaintiff, or by his firm, that firm collected and received from the E. S. Dean Company, or its agent, a commission or compensation for the false report; that at the time of receiving the instructions from the E. S. Dean Company, or Samuel Kellar, its agent, and at the time of the making by the plaintiff of the request to Herzoz & Sichel, and of the request to the other brokers, and at the time of the procuring said false reports, the plaintiff knew that it was designed and intended by his firm and the E. S. Dean Company, or its agent, to make some dishonest or fraudulent or criminal use of the said reports, and that he also knew that there was no lawful or honest purpose which such documents so procured by him could subserve.

To this charge and its specifications the plaintiff interposed a written answer, in which he denied that he had been guilty of fraud, and he proceeded to give what he claimed to be an explanation of the transactions referred to in the specification. That explanation was, in substance, that the firm of which he was a member had for a customer a concern known as the E. S. Dean Company; that prior to March 30, 1897, the plaintiff's firm had bought for that customer various stocks, and that on the afternoon of March 29, 1897, the margin being low, and the market having declined, the plaintiff's firm received instructions to make sale of all the stocks held for the E. S. Dean Company at the market price, and to repurchase the same line of stocks at the market price for another account which that same customer had with the plaintiff's firm; that on morning of the

30th of March, 1897, the plaintiff went upon the floor of the stock exchange for the purpose of carrying out the instructions, and that there he gave orders to buy stocks at various prices, each of which stocks he immediately sold to the same person from whom he bought it at exactly the same price. These transactions were publicly made, but on the same day Messrs. Herzoz & Sichel, who were to clear the transactions, refused to proceed therewith, and subsequently, and on the same day, Messrs. J. A. McMicken & Co. were substituted in the place of Herzoz & Sichel. The plaintiff, in his answer to the charge and specifications, then proceeds to claim that the transactions were had in good faith; that he had every reason to believe that the E. S. Dean Company was conducting an honest business, and was in a solvent condition; and that he used due care in his dealings with the orders, and duly reported them.

A hearing was had before the governing committee of the stock exchange upon the charge and answer, and, after an investigation, the plaintiff was found guilty and expelled, as above stated. Some time after his relations with the stock exchange were thus terminated, the plaintiff brought this action to be reinstated as a member, and for damages for his expulsion, he claiming that he did not have a fair trial by the committee; that there was not sufficient evidence to support the determination of the committee, that gross abuses of authority were committed on the investigation; and that he was in ignorance of the facts which invalidated the action of the committee in expelling him until long after the determination was made, and the paper in which he relinquished his right of membership was executed.

There are seven specific grounds upon which the plaintiff attacks, in this action, the proceedings had before, and the judgment of, the governing committee upon the charge and specification upon which he was tried. They are as follows: First, that on the trial evidence of acts and transactions wholly disconnected from those mentioned in the written charges, and of which plaintiff had no notice, was received against him; second, that upon the hearing, while plaintiff was present, no evidence whatever to sustain the charge that the plaintiff was guilty of the fraud charged, or of any fraud, was produced, nor were any facts proven from which such a conclusion could be deduced by fair or reasonable men; third, that the trial, and the evidence given thereat, wholly failed to show that the plaintiff was guilty, in any way of the charges made against him, or of any fraud, or showed any facts from which such an inference could reasonably be drawn; fourth, that the persons who actually made the charges against the plaintiff did not sign them, and that upon the trial the person or persons who actually made the charges, and who instituted and made the investigations resulting in the charges, and who appeared with the governing committee as a member or members thereof, and pressed the charges, and asked the governing committee to bring the plaintiff to trial, and who subsequently took an active part in procuring and preparing the evidence to be brought against the plaintiff, and who at the trial took an active part in examining the witnesses, and became witnesses and made arguments against

the plaintiff and in favor of his conviction, were allowed to sit as members of the committee at the close of the trial, and to vote upon the question of the plaintiff's guilt or innocence; fifth, that a number of the members of the governing committee who sat at the trial, and who voted upon the question of plaintiff's innocence or guilt, were prejudiced, biased, and had made private and personal investigations as to the matters in question outside of the committee, and had received evidence bearing thereon from outside parties, who were not produced before the committee; sixth, that certain witnesses who appeared before the committee, and testified against the plaintiff, had been interviewed by certain members of the governing committee who sat upon the trial, and that the testimony to be given by said witnesses was detailed and stated to them by said members of the governing committee in advance of the trial; seventh, that upon the trial there was introduced against the plaintiff an affidavit as to material facts disputed by the plaintiff, which affidavit was made by a person unknown to the plaintiff, and whom the plaintiff had never seen or heard of, or had any communication with, prior to the day of the trial, which affidavit was received and read in evidence, and the plaintiff given no opportunity whatever to examine or cross-examine said witness or person. There is a further ground of complaint that the plaintiff was not permitted to appear by counsel on the investigation. That ground requires no further consideration, as it is not shown that the plaintiff asked to be represented by counsel.

The court at special term directed judgment in favor of the defendant on the merits. A careful examination of the whole record satisfies us that the cause was properly decided. The plaintiff was brought to trial upon a written charge directed to his transactions upon the stock exchange of one specific day. He presented an answer to that charge which contains an admission that the transactions took place. He only denied that they were fraudulent, and that they were intended to aid in a dishonest practice. It appears that there was a full investigation made of the circumstances surrounding the transaction; or, in other words, the merits were fully inquired into, and, if the investigation was a fair one, the judgment of the stock exchange, to which the plaintiff as a member of that body was subject, cannot be reviewed on the merits by the courts. As was remarked in Lewis v. Wilson, 121 N. Y. 288, 24 N. E. 475, whether the committee decided rightly or wrongly upon the merits does not change the "attitude of a plaintiff as a member of the association. All that he could require was that the investigation should be conducted bona fide, upon a notice to him, and an opportunity to be heard, and that the decision made should be within the scope of the jurisdiction conferred upon the committee. Bigelow v. Benedict, 70 N. Y. 204; White v. Brownell, 2 Daly, 329; Lambert v. Addison, 46 Law T. (N. S.) 20; Dawkins v. Antrobus, 17 Ch. Div. 615." There can be no question here of the jurisdiction nor of the legality of the steps taken by the stock exchange to procure an investigation of the charge made against the plaintiff. When we come to examine the evidence in the record of the trial of this action, we are struck by the absence of proof to sustain any one of the

specified accusations made against the committee or its members in the conduct of the investigation which resulted in the plaintiff's expulsion. There is no evidence of acts or transactions wholly disconnected from those mentioned in the written charges having been received and used against the plaintff. The stenographer's minutes of the proceedings before the governing committee were lost, with the exception of a small fragment thereof. That may be an unfortunate circumstance, but the loss of those minutes is sufficiently accounted for. There is nothing to show that the plaintiff was affected by extrinsic and immaterial evidence. The plaintiff has failed to prove that there was no evidence to sustain the charge of fraud made against him. The burden of proof was upon him to show that he was unjustly convicted without evidence. He admitted the transactions. What fraudulent use might be made of such transactions would seem to be obvious, even to one unacquainted with the juggling methods that may be resorted to by unscrupulous brokers in stock transactions. The plaintiff did not prove that the person or persons who actually made the charges against him, and who instituted the proceedings, and who sat with the governing committee as a member or members thereof, or who pressed the charges, took an active part in procuring and preparing the evidence to be brought against him, or became witnesses and made arguments against him, and in favor of his conviction, or were allowed to sit as members of the committee, and to vote upon the question of his guilt or innocence. Nor did he prove bias or prejudice or personal hostility to him on the part of any of those who sat upon the committee, nor any such practices of any one connected with the committee as would show that its action was inspired by other than an honest intention to render a just judgment upon the case as it was presented; and it was affirmatively shown that the charge was signed and preferred by "the person who made it," in accordance with the rules and requirements of the law of the stock exchange relating to the subject. The case as it comes before us is barren of proof to authorize the reinstatement of the plaintiff.

There is one subject brought to our attention which requires notice, in view of the claim of the appellant that he was deprived by a ruling of the court of documentary evidence material to his case. He had caused to be served upon an officer of the defendant a subpœna duces tecum to produce a number of papers which it was asserted were used upon the investigation before the committee of the stock exchange. There was also served upon the attorneys for the defendant a notice to produce the papers. The secretary of the stock exchange was called as a witness. He had no knowledge of such papers, and could not, therefore, comply with the subpœna. The plaintiff's counsel then called upon the defendant's attorney to produce those papers. Some of them were in court in the possession of the defendant's attorney. The court declined to require their production, saying that he knew of no authority for an order of that kind. The court held that the plaintiff was entitled to make secondary proof of the papers called for, although there was no proof to show how they were material or necessary to the plaintiff's case.

We think the court was right in declining to compel the defendant's attorney to produce the papers, because it did not appear that they were material to the case, but we do not agree with the court below that it was without authority to require the production in a civil action of papers shown to be material and actually in court.

The judgment should be affirmed, with costs. All concur.