(48 Misc. Rep. 96)

WILLIAMSON v. RANDOLPH.

(Supreme Court, Special Term, New York County. August, 1905.)

1. ASSOCIATIONS—EXPULSION OF MEMBER.
    Before a member of a voluntary association can be deprived of his
    membership he must have notice of any charges against him, with an op-
    portunity to be heard in his own defense before an impartial tribunal.

2. SAME—HEARING—SUMMONS—COPY OF CHARGES.
    Where a member of a voluntary association received a summons to ap-
    pear before the directors to give information under the provisions of a
    certain article in the constitution, and on the back of the summons the
    by-law giving the authority of the directors to require the attendance of
    any member was printed, the summons was insufficient on which to base
    his expulsion, in the absence of notice of charges preferred against him,
    though there was no provision to that effect in the constitution and by-
    laws.

3. SAME—NOTICE OF CHARGES—SERVICE—EVIDENCE.
    Plaintiff sued to have it adjudged that he was a member of a certain
    voluntary association and to restrain its officers from interfering with his
    rights of membership. The answer pleaded plaintiff's expulsion after
    due trial. Held, that the burden was on defendant to prove service of
    notice of the charges against plaintiff, and, where plaintiff testified that
    all that he received was the summons to appear before the directors, such
    burden was not sustained by evidence of defendant's secretary that he put
    the charges in an envelope containing the summons, and the testimony of

a messenger that he delivered the envelope to plaintiff, though he did not know the contents.

**4. SAME—WAIVER.**

Plaintiff, a member of a voluntary association, on receipt of a summons to appear before the directors, heard the charges read, and a copy of them was handed to him, and he was present while the evidence was presented, with an opportunity to cross-examine, and made no objection to the procedure, nor did he make any request for further opportunity to be heard. *Held* a submission to the jurisdiction of the directors and a waiver of service of charges in advance of the trial.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Associations, § 10.]

**5. SAME—CHARGES—SUFFICIENCY.**

In proceedings for the expulsion of a member of an exchange, a charge that plaintiff, a member of a named firm, at a certain date, with intent to defraud, did acts detrimental to the welfare of the exchange in connection with the sale of certain stock for a certain person named, between June 15, 1900, and August 16, 1900, at which time the member withdrew from his firm, was sufficient to fairly inform such member that he was charged with fraud defined by the by-laws in relation to particular transactions within two specified months.

**6. SAME—HEARING.**

Where the board of directors of an association were properly convened, and proceeded regularly under its constitution to the trial of a member, and after a fair opportunity to be heard he was expelled, as provided by the constitution and by-laws of the association, and there was evidence to support the charges, and a fair trial was disclosed, the association, in an action to enjoin it from interfering with the rights and privileges of the member, was entitled to judgment.

Action by Harry L. Williamson against Lewis V. F. Randolph, as president of the Consolidated Stock & Petroleum Exchange of New York. Judgment for defendant.

Jay & Candler, for plaintiff.
Sullivan & Cromwell, for defendant.

CLARKE, J. The plaintiff prays that it be adjudged that he is a member of the defendant, a voluntary unincorporated association, and that the association and its officers be restrained from interfering with his full exercise and enjoyment of all the rights and privileges of membership in the association. The answer admits that prior to October 4, 1900, plaintiff was a member of the Exchange, in the enjoyment of the rights incident to such membership; that among the substantial rights of a member in such association is the right to use the Exchange. Plaintiff proved that his expulsion from the Exchange was read from the rostrum on the floor of the Exchange, and that he was notified of such expulsion, and that the doorman, whose duty it was to keep persons not entitled to the privileges of the Exchange off the floor, was also notified. There is a conflict of evidence as to whether plaintiff was physically prevented from going upon the floor, but the evidence is sufficient to show that plaintiff was excluded. The proof, together with the admissions in the answer, made out plaintiff's prima facie case, and the burden is on the defendant to show that such interference with plaintiff's rights was justified under its constitution and by-laws. This was determined on demurrer

to the complaint in this action, under the name of Williamson v.
Wager, 90 App. Div. 186, 86 N. Y. Supp. 684.

The answer denies that plaintiff has been a member since October
5, 1900, and that his rights of membership have been interfered with.
It sets up a number of separate defenses. The first defense is that
on October 4, 1900, plaintiff was duly tried before the board of
directors on the charge of obvious fraud in connection with the
transactions of his firm, and expelled in accordance with the pro-
visions of the constitution and by-laws of the Exchange; that his
membership terminated on that day, and he has not since been a
member of the Exchange. The expulsion pleaded means expulsion
after a proper trial. The general rule governing trials by voluntary
associations is that of fair play. The accused must have notice and
an opportunity to be heard in his own defense, to confront his ac-
cusers, and to examine witnesses, and be tried by an impartial
tribunal. As was stated in Hutchinson v. Lawrence, 67 How. Prac.
38, 55:

"In every proceeding before a club, society, or association having for its
object the expulsion of a member, the member is entitled to be fully and fairly
informed of the charge, and to be fully and fairly heard."

The method of procedure prescribed by the constitution and by-
laws of the association must be followed, and all their requirements
observed. The constitution of the defendant vests the government
and management of the association in the board of directors, with
power to try all charges against members. The by-laws provide that
a member shall have a place of business where all notices may be
served, shall notify the secretary thereof, and give written notice of
any change of such place of business. There is also a provision:

"The board of directors * * * shall have power to require the attend-
ance of any member of the association as a witness or otherwise. * * *
For the purpose of securing such attendance, * * * written notice shall
be served upon such member requiring him to attend in person * * * by
delivering to him such notice or leaving the same at his office or residence."

It is conceded that plaintiff received the following notice:

"You are hereby summoned to appear before the board of directors on
Thursday, October 4, 1900, at 3:30 p. m., in the directors' room, to give such
information as they may require under the provisions of article 13 of the con-
stitution. Yours respectfully, Rud. Huben, Sec'y."

This notice had printed upon its back the by-law above quoted as
to authority to require attendance of any member as a witness or
otherwise. It is contended that this is not such notice as fair dealing
requires. The notice served would be equally applicable to the sum-
mons of a witness as to the summons of the accused. The notice
required by fair play is a notice of the charges preferred. There is
no provision in the constitution and by-laws for service of a notice
of the charge. Such notice, however, is required in fairness to the
accused, even in the absence of any provision therefor in the by-laws.
Fritz v. Muck, 62 How. Prac. 69. A mere summons to appear is not
sufficient, but the accused should also be given notice of the charges
preferred. People ex rel. Deverell v. Musical Mut. Protective Union,
118 N. Y. 101, 23 N. E. 129; People ex rel. Merschein v. Musical
Union, 47 Hun, 273.

There is a conflict of testimony as to the service of a copy of the charges in this case. Plaintiff states that the summons was the only paper, received, and the defendant's secretary states he put a copy of the charges in the same envelope as contained the summons. The burden was on the defendant to give proof of service. This it failed to do, as its messenger states he does not know what the envelope which he served contained. The plaintiff, however, appeared before the board of directors. The charge was thereupon read to him, and a copy handed to him. The board then proceeded with the trial. Plaintiff's evidence and that of Mr. Zeeman, his associate, taken before the investigating committee, was read aloud. Each of them was asked if the evidence as read was correct. Plaintiff and his associate were then further examined at some length. Plaintiff was asked whether he wished to examine Mr. Zeeman, and he said, "No, sir." After a statement had been made by his associate on his own behalf the president asked plaintiff if he wished to make any statement and he replied:

"No; I cannot say that I have anything further to state."

Judge Bradley, in People ex rel. Deverell v. Musical Mut. Protective Union, 118 N. Y. 101, 107, 23 N. E. 129, 130, says:

"If the relator, when he appeared pursuant to the summons served on him, had submitted himself to the jurisdiction of the board of directors in the matter, it would have been a waiver of the necessity of serving him with the charges. This a party may do when summoned to appear before any tribunal having jurisdiction of the subject-matter involved."

In that case the accused denied the jurisdiction of the board and went away, and no charges were served upon him. The learned judge continues:

"The conclusion of the court was warranted that he did not submit himself to the jurisdiction of the board for the purposes of the proceeding. and that the service upon him of the charges as made by the accusing member was not waived. No steps were taken in it while the relator was present."

In People ex rel. Merscheim v. Musical Union, 47 Hun, 273, 276, Mr. Justice Daniels says:

"The relator, by his appearance at the time and place mentioned in the summons, did not deprive himself of his right to the previous service of a copy of the charges intended to be made the subject of proof against him. For on such appearance he denied the right of the directors to proceed against him, and refused to answer the charge inferentially referred to in the summons. If he had answered the summons as a charge, or contested the case before the directors, then these would have been the grounds upon which a waiver of this right to a copy of the charges might be placed; but he did nothing of the kind."

In the cases cited by plaintiff the accused either was not present (Hutchinson v. Lawrence, 67 How. Prac. 38; Loubat v. Leroy, 40 Hun, 546; Fisher v. Keane, L. R. 11 Ch. D. 353; Gray v. Christian Society, 137 Mass. 329, 50 Am. Rep. 310), or, if present, as in the cases already quoted, raised objection as to the jurisdiction. Thus in People ex rel. Decker v. Hoboken Turtle Club (Sup.) 14 N. Y. Supp. 76, Mr. Justice Van Brunt says:

"It would thus appear that the board of governors did not obtain jurisdiction of the relator, he not having appeared before them, and their action was unauthorized by the constitution."

In Commonwealth v. Pennsylvania Beneficial Institution, 2 Serg. & R. 141, the court says:

"If he is present when the subject is taken up, and willing to enter into the inquiry immediately, there is no occasion for further notice. But no man should be expelled in his absence without notice."

I have not overlooked the case of Downing v. St. Columbia's Society, 10 Daly, 262, in which Judge Van Hoesen says:

"It does not mend the matter that Mr. Downing was present at the meeting. If he were not apprised of the charges, he had no opportunity of bringing witnesses to prove that he was no malingerer, but a severe sufferer from a painful malady that was hurrying him to the grave. It has been decided that, though a member attends, and enters upon his defense, he does not waive his right to a notice of the charges."

Where the accused makes protest and denies the jurisdiction of the court, he undoubtedly does not waive the objection by his presence and defense. If the case last cited is authority for the proposition that the accused may not waive jurisdictional defects, it has not been followed, and appears to be overruled.

Bacon on Benefit Societies, vol. 1 (3d Ed.) § 102, says:

"By appearing generally the member waives objections as to notice and the regularity of the appointment of the tribunal."

Angel & Ames on Corporations (11th Ed.) p. 469, § 421, says:

"This notice may, of course, be dispensed with, when the party has appeared at the meeting and either defended himself, or answered or confessed the charge against him, for this is a waiver of his right to notice."

Proceeding without protesting against the personnel of the board was one of the reasons for holding a plea of invalidity on that ground unavailable in White v. Brownell, 4 Abb. Prac. (N. S.) 162, 201. The law in this state was settled in People ex rel. Brewster v. Old Guard, 87 App. Div. 478, 84 N. Y. Supp. 766, affirmed without opinion 178 N. Y. 576, 70 N. E. 1105. Mr. Justice Patterson there says, writing for a unanimous court:

"The gist of the relator's objection is that he was not tried by a tribunal fairly constituted. * * * In the case at bar the relator submitted to the jurisdiction, accepted the court as constituted, allowed the investigation to proceed, and participated in it to the very end. He could waive his objection to jurisdiction, if there were any (People ex rel. Deverell v. Musical Mut. Protec. Union, 118 N. Y. 107, 23 N. E. 129), and he did so. By his acquiescence he induced the board of officers to proceed with the investigation."

The jurisdictional defect there claimed and held to be waived was that the trial board was prejudiced, but the jurisdictional defect urged in the case cited as authority was, as here, failure to give notice in advance of the charges. The plaintiff in the case at bar heard and saw the charges. He was present during the entire time that evidence was presented, and heard it all. He was given an opportunity to cross-examine, and to make any statement he desired. He acquiesced in the procedure, and made no objection of any kind, nor any

request for further oportunity to be heard. After denying his guilt upon being examined by the board he said he had nothing further to state. He thereby submitted to the jurisdiction of the board that was trying him, and waived the necessity of serving him with the charges in advance.

It is further contended that the charge was not sufficiently specific. The special committee "charge Harry L. Williamson, a member of the firm of John Zeeman & Co., up to August 16, 1900, with obvious fraud and false pretense, or acts detrimental to the interest and welfare of the Exchange in connection with purchases and sales of stock supposed to be made for Dr. J. H. E. Sands between June 15, 1900, and August 16, 1900, the date of Mr. Williamson's withdrawal from the above firm." The by-laws of the Exchange define obvious fraud or false pretense as a failure to purchase or sell any security when employed so to do, or to keep a record of each transaction in a purchase and sales book, showing date, number of shares, name of security, price, and broker from whom bought, or to whom sold, and to furnish the customer during the day of execution of the order with the name of such broker, and, if bought or sold in another exchange, the name of such exchange, or, publicly, by advertisement or circular letter, offering to do a discretionary business or conduct any so-called syndicate business. Power is given by such by-laws to the board of directors, after investigating the facts, to impose the penalty of explusion. In view of the definitions I am of opinion that the charge is sufficiently specific. Although somewhat indefinite in form, it was sufficient to fairly inform the plaintiff that he was charged with obvious fraud, defined by the by-laws, in transactions with a particular customer within two specified months.

In People ex rel. Johnson v. New York Produce Exchange, 149 N. Y. 401, 44 N. E. 84, the complaint accused a member of the New York Produce Exchange of "proceedings inconsistent with just and equitable principles of trade as follows: Nonfulfillment of contract of November 16, 1892." Chief Judge Andrews (at page 413 of 149 N. Y., page 87 of 44 N. E.) says:

"To require technical precision in complaints of this character, drawn by merchants or business men, and to apply to them the strict rule of pleading in an action in a court of law, would greatly embarrass, and many times defeat, the disciplinary regulations of such associations. Members are entitled to fair dealing, and to have their substantial rights protected. But the proceedings in such cases are necessarily somewhat summary, and mere informality, when substantial rights are preserved, ought not to render them void. We think the complaint was sufficient in form and substance to give jurisdiction to the board of managers, under the by-law, to make the inquiry."

The plaintiff, however, made no objection to the form of the charges read and handed him, but submitted to the trial. If the charges were defective, he thereby waived the defect. People ex rel. Ward v. Uptown Ass'n, 9 App. Div. 191, 194, 41 N. Y. Supp. 154; Matter of Haebler v. New York Produce Exchange, 149 N. Y. 414, 44 N. E. 87. In the case last cited Judge Martin held:

"If, however, the complaint was insufficient, yet, as the relator appeared, raised no objection to its sufficiency, and tried the case upon its merits, it must be treated as sufficient, and any objection to it upon that ground regarded as having been waived."

The board of directors was properly convened, and proceeded regularly under the constitution. The plaintiff, after having been given a fair opportunity to be heard, was expelled by a two-thirds' vote, as provided by the constitution and by-laws.

Plaintiff further urges that the evidence presented does not warrant his explusion. "It being shown that the body purporting to act had jurisdiction of the subject-matter and of the person, and that they proceeded regularly under the rules provided for their guidance, and that they thereafter rendered a decision, the presumption that it is founded on sufficient evidence arises; and, while this presumption is not conclusive, it rests upon the one who assails the decision to show in what respect it is either irregular or void." Young v. Eames, 78 App. Div. 229, 239, 79 N. Y. Supp. 1068, affirmed 181 N. Y. 542, 73 N. E. 1134; Neukirch v. Keppler, 56 App. Div. 225, 231, 67 N. Y. Supp. 710, affirmed 174 N. Y. 509, 66 N. E. 1112. The entire evidence on which plaintiff was tried is before the court. The rules of law controlling upon an appeal to the courts from the determination of such quasi judicial tribunals have frequently been stated. The court is not to determine whether it would, upon the merits, have reached the same or a different conclusion, or whether it was reasonable or unreasonable. It is to inquire whether the case was so bare of evidence to sustain the decision that no honest mind could reach the conclusion that the accused was guilty of the charge. There must be a total absence of evidence to support the sentence of explusion, which is equivalent to an absence of jurisdiction to make any inquiry. The proceedings must be instigated and conducted in good faith. Young v. Eames, 78 App. Div. 229, 79 N. Y. Supp. 1068, affirmed 181 N. Y. 542, 73 N. E. 1134; People ex rel. Johnson v. New York Produce Exchange, 149 N. Y. 401, 44 N. E. 84; Matter of Haebler v. New York Produce Exchange, 149 N. Y. 414, 44 N. E. 87; Lewis v. Wilson, 121 N. Y. 284, 24 N. E. 474; Austin v. Dutcher, 56 App. Div. 393, 67 N. Y. Supp. 819. These rules are based upon the fact that, when the member joins such an association, he has bound himself to submit to the decision of the agreed tribunal. In this Exchange there is an express stipulation in the constitution to this effect, viz:

"That the signing of the constitution of this association shall be considered as an obligation and pledge of each member to abide by the same, and any amendments thereto, and also by all by-laws, rules or regulations which may be hereafter adopted."

The constitution further provides:

"That all powers necessary for the government and management of the association and its concerns shall be vested in the board of directors. They shall have power to try, on presentation, all offenses under or against the laws of the association, and all charges against members, and their decision shall be final. Should any member of this association be guilty of obvious fraud, of which the board of directors shall be the judge, he shall (upon conviction by a vote of two-thirds of the members of said board) be expelled."

An examination of the testimony upon which plaintiff was tried shows that sales were made by John Zeeman & Co. between June 15, 1900, and August 16, 1900, supposed to be for Dr. Sands. The orders were not executed as directed and reported but the brokerage-

house of John ·Zeeman & Co. took advantage of the market· and bought or sold at other figures. Profits, in addition ·to commissions, were made, varying from one-quarter to three-eighths per cent. Where a profit was made, it was added to the commissions account of the house. Orders were crossed and not.executed on the market. Sales were entered in the names of brokers, from whom or to whom no sale had been made. Correct reports were not made to the customers. Sales were made of which records were not kept. Plaintiff was as- sociated with John Zeeman. They were the only persons doing business as John Zeeman & Co. Plaintiff had 40 per cent. interest in the profits which he received. He had access to the books at. all times, and examined them occasionally, and talked with Mr. Zeeman about them. Plaintiff had been eight years a member of the Ex- change. Mr. Zeeman, who had no previous experience as a broker, had been a member for four months. Mr. Zeeman confessed his own guilt. From February 15th, when the association with Mr. Zeeman was made, to May 15th, plaintiff·was the active member on the floor of the Exchange. From May 15th to August 16th he had charge of a new Brooklyn branch office, except that he was away three weeks in July. At least one of these weeks and parts of other days in July were spent on the floor of the Exchange executing orders. Dr. Sands came to the Brooklyn office in response to a circular letter. He gave orders at the Brooklyn office, and insisted that plaintiff handle his account. Mr. Zeeman, when questioned as to the use of a member's name in a transaction that was never executed, says: "We have been very careless with names." When examined about the extra one-eighth, Mr. Zeeman says:

"Sometimes, when we even up a loss made on some other trade, we may not report a trade as it was. Q. If you sold it a whole per cent. higher, would you take the 1 per cent? A. (by Mr. Zeeman). His order may have been to sell it at 1, and we sold it at one-fourth. We thought, if we would give it to him at an one-eighth he would be satisfied." .

In another place:

"Q. The first account we examined you on you·took one-eighth of 1 per cent. from your customer, and on the last account you blame it on Williamson, A. I don't blame it on anybody. I am only saying Mr. Williamson managed the account for him. He probably considered himself entitled to it for mak- ing that money for him. He probably thought he was entitled to one-eighth commission. The doctor was satisfied. He made about $500 the first week he was there. Q. Did you ever set aside anything for Williamson? A. I said Mr. Williamson thought he was entitled to one-eighth. Q. Did you ever pay him? A. I suppose, being partners, it went into the business."

Concerning the early relation with Dr. Sands, Mr. Zeeman says that, when he discovered how plaintiff was handling the doctor's account, he told plaintiff he wouldn't have any discretionary ac- counts.

"Q. Then he took an extra one-eighth because he was handling the· ac- count as a discretionary account? A. I don't say that he did it. I only sur- mise it."

Upon further examination:

"Q. Did you ever confer with Mr. Williamson in regard to the methods of doing business on this floor? A. Well, of course, I didn't know anything

about the business. Anything that I know about the business I was told by somebody else."

When pressed to give answer as to whether the idea of making these extra eighths originated with Mr. Williamson, Mr. Zeeman several times refused to answer. After plaintiff had admitted that he, as an experienced broker, advised Mr. Zeeman:

"Q. I would like to ask Mr. Zeeman if Mr. Williamson ever advised with him in reference to these one-eighths that were made on one account and perhaps lost on another. Did Mr. Williamson ever give you any advice on that point? A. I decline to answer."

Plaintiff was satisfied to deny that he had any connection with the offenses, and stated that he was unable to explain the particular transactions. He also denies that he was a partner, but admits he shared in the profits. Whether there was a technical partnership or not, the intimate association of the two men is clear. I am unable to hold that the case is bare of evidence to sustain the decision against the plaintiff.

Plaintiff further urges that he was dumbfounded at the hearing; that he was taken by surprise, and did not realize he was on trial. I am not favorably impressed by this plea. There is much with which such claim is irreconcilable. A special committee had been appointed in June to investigate charges against members. Plaintiff was examined by this committee on September 28, and asked to explain the fraudulent transactions. At that examination the president said:

"You know that you are responsible for that state of affairs as a partner of the concern. It is a direct violation of our rules, the crossing of trades, bucket shopping, or anything of that kind rendering one liable to expulsion."

The president testifies that on the next day plaintiff called on him and requested that he be left out, and was told that his case would have to come up before the board, and that he could make his plea there. One of the directors testifies that after the special committee meeting, and before the trial by the directors, he was requested by plaintiff to intercede for plaintiff with the board of directors. Before the trial proceeded plaintiff admits that the formal charge was read and a copy handed to him. After the reading of the testimony taken before the special committee questions were asked Mr. Zeeman and plaintiff which obviously referred to plaintiff's individual responsibility. The opportunity offered to cross-examine and to make any statement were clearly signs that he was accused. It is incredible that any intelligent person could sit through such an ordeal and not realize that he was on trial. Plaintiff's own explanation, given on the trial before me, shows that he did realize the fact. When asked why he did not request an opportunity to produce Dr. Sands, plaintiff said: "Because I could not see any evidence that was detrimental to me in any way." Plaintiff took his chances before the tribunal upon the evidence before them. He made no claim then of surprise and no request, but submitted his case. He cannot now complain of the verdict. As I am of opinion that the defendant has sustained its first defense, it is not necessary to consider the additional defenses pleaded. Membership in this Exchange affords opportunity, not only for an honorable and profitable business career, but there are

attached to such membership valuable pecuniary rights and benefits. I have examined the proceedings thus at length, having in mind the serious consequences of explusion. The action of the association in excluding the plaintiff after October 4, 1900, is justified. It appears that plaintiff had the fair and impartial trial which justice requires, and there was evidence to support the charge upon which the directors, who were to be the judges of its sufficiency, could base their judgment of explusion.

Judgment for the defendant, with costs. Submit findings on notice.