Louis Bertucci and Another, Plaintiffs, *v.* United Cement Masons' Union No. 1 of Greater New York and Vicinity, Local 570, and Others, Defendants.

Supreme Court, New York County, February 4, 1931.

*Vito Marcantonio* [*Vincent H. Auletta* of counsel], for the plaintiffs.

*Jeremiah A. O'Leary*, for the defendants.

CALLAHAN, J. This is an action for a permanent injunction brought by two members against their labor union and the officers thereof. The trade in which the plaintiffs and all the members of the defendant union were engaged was that of cement masons or finishers. The defendant local has a charter from, and is and has been for many years a local affiliated with the Operative Plasterers and Cement Finishers International Association. In 1925 a dispute arose as to whether a certain class of work properly belonged to the cement masons' or the plasterers' trade and when the international union decided that it belonged to the plastering trade approximately ninety per cent of the members of defendant local refused to abide by that decision and seceded and formed an independent union. Thereafter this independent union became affiliated with the Bricklayers, Masons and Plasterers International Union, receiving a charter from them as local No. 32. For a year or more a state of trade warfare existed between this new local and what was left of the old for the control of the cement mason trade in New York city. Throughout the country there were numerous disagreements between the internationals mentioned. These arose mainly because of the fact that in some parts of the country plasterers and masons were members of locals affiliated with one international while elsewhere they were in locals affiliated with the other international.

In 1911 they had entered into a written agreement covering some of the disputed points, but certain acts in about 1925 were deemed to constitute breaches of that agreement. As a result the 1911 agreement was declared abrogated. In order to bring about peace an arbitration was held in 1925 which resulted in a conference held in Atlantic City, N. J., in March, 1927, over which Hon. Elihu Root presided. This conference was attended by several representatives of the two internationals and at the end of the conference there was set down in the form of a report or the minutes of the conference certain agreements which were subscribed by those representatives. This report so subscribed contained the following: " As supplementary to the foregoing understanding it is agreed that in restoring the 1911 Agreement the representatives of the Bricklayers, Masons and Plasterers' International Union and the Operative Plasterers and Cement Finishers' International Association shall withdraw all charters of Local

Unions organized and established in cities and towns contrary to the provisions of the 1911 Agreement.

"Pursuant to this understanding the Operative Plasterers and Cement Finishers' International Association agrees to withdraw locals from the following cities and towns."

There follows a list of such cities. The report then proceeds: "The Bricklayers, Masons and Plasterers' Union agrees to withdraw Locals from the following cities and towns."

Again follows a list of cities which includes New York city. The report further continues: "It is understood that all agreements, rules and regulations bearing on the 1911 Agreement drafted and accepted at all Conferences held subsequent to the adoption of the 1911 Agreement are restored, recognized and re-established.

"The Representatives of the Bricklayers, Masons and Plasterers' International Union and the Operative Plasterers and Cement Finishers' International Association pledge themselves to cooperate together in bringing about a transfer of members in the cities and towns where charters are withdrawn to the jurisdiction of the organization which is granted jurisdiction and control."

It is plain that although this was in the nature of a report of the conferences it was intended to be and was a binding agreement between the internationals. It was treated as such.

Shortly after such agreement was entered into a representative of the Bricklayers International came to New York and took away the charter of local 32. This was in accord with the provisions of the Atlantic City agreement to leave the territory in New York city to the Plasterers International. This left the cement masons who had formed local 32 without a charter. Thereupon steps were taken to have the members of local 32 go back to the defendant local 570. In the meantime, however, the constitution of local 570 had been amended to contain the following provision: "Sec. 88. Any one who has worked against the interest of Local 570 shall be denied the right of a voice, a vote or to hold office for a period of ten (10) years."

There is some doubt as to when that section was amended, but it appears *prima facie* that the amendment was duly adopted before the Atlantic City conference. In addition, the executive board of local 570 passed a resolution that those who had formerly seceded from their local would be taken back only on condition that they pay certain sums and that they be deprived of the right to speak, vote or hold office for ten years. At the time when the plaintiffs and other former members of local 32 applied for reinstatement as members of defendant local they were required to sign an agree-

ment to abide by all decisions of the Plasterers International, to abide by the constitution and by-laws of local 570, and to abide by all rulings of the officers of local 570. In addition, those who were received back into 570 were termed " associate members " and their union cards so stamped. There was considerable conflict on the present trial as to whether the plaintiffs or other members seeking to rejoin 570 were actually advised of the change in the constitution depriving them of the right of voice, vote and to hold office. I find that some of the leaders in local 32 were specifically advised, but most of the former members, including the plaintiffs, were not specifically so advised. Later, when the plaintiffs attempted to take part in the discussion of union affairs they were deprived of the right to speak. This action was brought for an injunction to prevent their being deprived of the right of voice, vote and to hold office. The constitution of local 570 provides: " Sec. 59. This Local shall at all times comply with the Constitution of the O. P. & C. F. I. A. in case of a strike or a lockout; or in matters outside of and beyond local autonomy."

If, then, the resolution to deprive the returning members of the right of voice, vote and to hold public office is in conflict with the constitution of the international union it could not be upheld unless it relates to a matter of local autonomy. It appears to me to be beyond any question of local autonomy as its enforcement would affect the welfare not only of the local but of the whole trade, it certainly being in violation of the terms of the Atlantic City agreement of 1927 that best efforts were to be used to bring about a transfer of members to the surviving international in a particular locality. There appears, however, to be an insurmountable obstacle which prevents granting the relief which plaintiffs seek, that is, that the plaintiffs have not exhausted their remedy within their own body, to wit, the remedy of appeal to the international union. The law is well settled that the courts will not interfere with the conduct of voluntary associations of the nature of those involved herein unless they have exhausted all remedies open to them under their own regulatory provisions. (*Matter of Haebler* v. *N. Y. Produce Exchange*, 149 N. Y. 414; *Moyse* v. *N. Y. Cotton Exchange*, 143 App. Div. 265; *Gray* v. *Ferris*, 230 id. 416.) Counsel for plaintiffs take the position that an appeal to the international would be futile in this case for two reasons: (1) That the present plaintiffs being without the right of voice have no right to appeal to the international body; (2) that the relief that might be afforded on such appeal would be too long delayed. As to the first reason assigned, it does not appear that the right of appeal is refused plaintiffs. The international constitution states that if a member

of a local has any grievance he may present it to the international body in a designated fashion. This right appears to have been open to plaintiffs. As to the second objection, it appears that while the constitution of the local provides for a hearing of such appeal at biennial conventions, it further appears that the constitution of the international provides that such matters can be passed on by the executive committee of the international when the conventions are not in session. In addition it appears that an international convention will be held in the present year. It does not necessarily follow, therefore, that any undue delay need ensue on such appeal. It seems to me not only that by force of well-established legal precedent am I compelled to hold that it is necessary to exhaust the remedy within the union, but that it is for the best interests of all concerned that whatever hardship the delay involved in an appeal to the international body may entail, it is far better to preserve the requirement that organizations such as those involved herein and their members attempt to settle their own disputes without resort to the courts. The defendants conceded that the plaintiff Bortucci is entitled to unconditional reinstatement as he was not a member of local 570 at the time of the secession. As to him adequate provision may be made in the judgment if relief has not already been afforded him. Otherwise judgment is awarded the defendants, without costs. Submit findings.