SAM KAPLAN, Plaintiff, *v.* WILLIAM C. ELLIOT, Individually and as President of International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Defendant.*

Supreme Court, New York County, December 20, 1932.

* See, also, 146 Misc. 400.

*Ornstein & Silverman* [*Theodore Ornstein* and ——— *Silverman* of counsel], for the plaintiff.

*Rubien & Bregoff* [*Abner J. Rubien, Isidore Bregoff, Copal Mintz* and *Samuel M. Birnbaum* of counsel], for the defendant.

*George C. Foster*, counsel *ad hoc vice*.

COTILLO, J. The plaintiff seeks an injunction *pendente lite* restraining the defendants from enforcing a certain resolution adopted by the general executive board of the defendant summarily removing the plaintiff from his office as president of Local 306 and from treating the plaintiff in any manner other than as such president, and from in any way interfering with and hindering the plaintiff in the performance of his duties and functions as president of Local 306 or from in any way interfering with his possession of the books, records, documents, moneys or other property of the local as president thereof.

The defendant International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, hereinafter referred to as the "Alliance," is an international labor organization having jurisdiction over employees in the moving picture industry. It is a voluntary unincorporated association and its membership comprises numerous local unions in the same craft in the United States and Canada, with an aggregate membership of 32,000. These local unions are chartered by

the defendant under its jurisdiction. The Alliance is also affiliated with the American Federation of Labor. Local 306 is the only local union chartered by the Alliance in the city of New York, having received its charter in 1913. It is likewise a voluntary association, its membership consisting of over 1,200 moving picture operators employed within the jurisdiction of Greater New York. The plaintiff has been elected its president continuously since 1926. On November 28, 1932, the general executive board by resolution summarily removed from office the plaintiff and other officers of Local 306, and took possession, in the name of the Alliance, of all its records and property, including its seal. This action plaintiff claims was in derogation of his rights and in violation of the charter of No. 306 and the constitution of the Alliance. He asserts he had no notice of the charges against him, and was given no opportunity to be heard; that although he was aware that the Alliance was properly conducting an investigation of the affairs and management of Local No. 306, there were no specific charges preferred or pending against him in his capacity as president of Local No. 306. He further claims that neither the purpose of the investigation nor the information sought to be obtained was ever disclosed to him; and he never appeared at a trial before the governing body, that is, the executive board of the international, in answer to any specific charges.

The defendant, through its officers, justifies the removal of the plaintiff, asserting that he was removed only after a thorough investigation of charges made against him, of which he was aware, and that he submitted himself to the jurisdiction of the executive board and was heard in his own defense. In explanation of its action it alleges that, beginning with January, 1929, and continuously thereafter, there had been a great deal of dissension in the local; complaints against unfair practices on the part of the plaintiff and his co-officers had been initiated in the courts, and very serious charges were made against him in the course of the litigation, in the public press, in indictments, in investigations by the American Federation of Labor, and in numerous complaints made to the officers of the Alliance. The accusations and their public airing brought about a situation of scandal with serious effects upon organized labor. They became so widespread and so public that the president of the American Federation of Labor and the executive council of the American Federation of Labor took official as well as unofficial notice thereof. It was generally recognized that the situation with respect to Local 306 was detrimental not only to those immediately connected with the union, but to organized labor as a whole.

By September, 1932, the defense continues, the charges against

Kaplan which reached the officers and general executive board of the Alliance covered a large field. The plaintiff was accused of (1) the use of his power as president of the local for the personal benefit of himself and other officers and to the detriment of his local and its members; (2) oppression of members of the local who opposed his rule or policies, to the extent of depriving such men of work, expelling them from the union, refusing to reinstate men after such reinstatement was ordered by the courts, discrimination in the assignment of positions, threats of bodily violence, the inciting of assaults, and general terroristic activities; (3) mismanagement and illegality in the handling of the funds of the union whereby approximately $800,000 annually was collected and the same amount spent without proper bookkeeping records and with vast sums unaccounted for; (4) discrimination in dues charged to out-of-town card men in direct violation of the Alliance constitution and by-laws; (5) employment of non-union labor in a business conducted by him; (6) inability to properly represent the union in its dealings with exhibitors because of his position as president of the Sam Kaplan Manufacturing Company, which company sold to exhibitors motion picture supplies and parts; (7) discrimination in wage scale contracts with exhibitors in favor of such exhibitors as favored his company, the Sam Kaplan Manufacturing Company, by purchases of supplies from such company; and (8) bringing Local 306 and organized labor in general in public disrepute. In September, 1932, in view of the nature and persistence of these charges and the publicity given to them, the general executive board of the Alliance, which is vested with the power to investigate and decide charges, determined that a complete investigation be made in order to protect the interest of organized labor and requested every officer and member of the executive board of Local 306 to appear before a meeting of the general executive board of the Alliance. Kaplan and every officer and member of the executive board of Local No. 306 appeared before this board at a meeting held in New York city on September 6, 1932. They were told of the charges and the complaints and grievances and of the fact that a complete investigation of the charges against the men implicated was being conducted. It was made clear to them that every one of them was involved and that they would be given every opportunity of explanation and defense. Kaplan and the others replied that they welcomed the investigation. Thereafter the investigation continued both here and in Cincinnati and hearings were held daily between September sixth and seventeenth, inclusive, except Sundays, and on November twenty-fifth and twenty-sixth. At the latter hearings Kaplan appeared with his attorneys and was heard in person at several sessions. He was given every opportunity

to meet the charges and produce such evidence and witnesses as he desired. After a full and complete hearing and upon all the testimony adduced the general executive board of the Alliance decided that the accusations against Kaplan and the others were well founded. This determination, defendant insists, was founded on the evidence, and the evidence alone, and no other result could have been reached.

The foregoing statement represents the justification by the general executive board of its action in removing plaintiff and his fellow-officers. For the moment we may disregard the question whether it accurately states the facts and examine the main grievance of the plaintiff — that his removal as president was contrary to the constitution and by-laws of Local 306 and of the Alliance itself. The constitution and by-laws of the local union are subject to the provisions of those of the Alliance, under whose supreme authority it operates. But the by-laws of the Alliance grant home rule to all the locals in giving them full control over their affairs. The repeal of the home rule principle can be accomplished only by a two-thirds vote of the delegates present at any one convention. Since the home rule provision has not been repealed, plaintiff argues that any charges looking to his removal from office should have been brought under article X of the constitution of Local 306 and tried before the trial committee of that body. And even if he could properly have been tried before the Alliance, it is claimed that the forms of trial prescribed by article IX of the by-laws have not been complied with, in that no written charges were submitted to the accused, nor was he even notified that charges were pending against him, the understanding conveyed to him being that the affairs of Local 306 were under investigation.

The two principal contentions of the defendant in reply are one in the nature of a counter-offensive and the other defensive. It is urged that plaintiff had no standing in the court because he has failed to exhaust his remedies within the organization. Ironical reference is made to his own conduct mentioned in *Polin* v. *Kaplan* (257 N. Y. 277) in attempting to discipline members of his own local for resorting to court proceedings before availing themselves of the remedies of appeal provided by the constitution of the union. But the only right to appeal from the decision of the general executive board is to the international alliance in convention. The latter does not meet until the summer of 1934, and the difficulties of obtaining a special convention are almost insuperable. By the time the regular convention assembles, the term for which plaintiff has been elected will have expired. It may then be said that under those circumstances it would be unreasonable and a practical denial

of justice to require that the plaintiff should exhaust his remedy within the order before bringing this action. (*Fritz* v. *Knaub*, 57 Misc. 405; affd. on opinion below, 124 App. Div. 915.)

In reply to the challenge that obviously the prescribed forms provided for the removal of officers by the constitution of the local have not been followed, the defendant points to article VII of the constitution of the Alliance which provides that "in case of any emergency the International President shall have the power to suspend any law or laws of the Alliance or of any local union, provided he obtains the unanimous consent of the members of the General Executive Board." It may be inferred from all the facts and circumstances that the board unanimously declared such an emergency to exist. It is not disputed that acting upon many complaints it caused an extensive examination of the affairs of |Local 306 to be made. Plaintiff appeared at the hearings and made his explanations. Whether he was cognizant of specific charges against him is a matter of dispute. That he knew that the investigation was directed in part against his official conduct is beyond doubt. If he made a defense upon the merits without objection to the failure to serve him with a copy of the charges, he has waived the objection to the jurisdiction. (*People ex rel. Deverell* v. *Musical Mutual Protective Union*, 118 N. Y. 101.) Plaintiff, however, contends that he could not be said to have submitted to the jurisdiction of the board for trial of specific charges against him because he appeared only for purposes of what he understood to be a general investigation of the affairs of Local 306. Whether this be so or not can only be determined by reading the minutes of the hearing, which are not before me. Nor can I pass upon the question whether, assuming plaintiff duly submitted to be tried, he has had a fair trial pursuant to the rules of the organizations. Only upon consideration of the full record of the proceedings, which may best be done on the trial of the action, can this be fairly determined. As is said in *People ex rel. Holmstrom* v. *Independent Dock Builders' Union* (164 App. Div. 267): "The well-established rule governing interference by the courts with the internal affairs of voluntary associations and membership corporations in regard to disciplinary proceedings is that the court will look into the record to see whether the practice and proceeding has been in accordance with the constitution and by-laws of the organization, whether the charges are substantial, and whether the member has had fair notice and opportunity to be heard. In short, has the member received fair play? If so, the court will not substitute its judgment for that of the organization. The cases bearing upon this subject may be found collected in *Williamson* v. *Randolph* (48 Misc. 96)."

I cannot, as I have observed, determine in advance of trial whether the plaintiff has received fair play in every respect. He has been removed as president and disqualified from holding office for five years. But he has not been deprived of his union card. The hardship visited upon him has not been egregious. While he has been deprived of a privilege, he has not been deprived of a vested right. He stands before the court as a complainant in his individual capacity, seeking in effect to be restored to his office. The complaint is not initiated by the union for having been deprived of its rights of self-government. But even in the present situation plaintiff on a proper showing, might be entitled to redress. Thus, that part of the sentence which disqualifies him from holding office for five years might be a proper subject of doubt as to its legality. (*Bertucci* v. *United Cement Masons' Union*, 139 Misc. 703.) And yet the constitution of the local provides for a ten-year period of disqualification.

Be that as it may, I must recognize that an emergency existed which at least authorized the general executive board to suspend the officers and protect the affairs of the local in the interim. The relation of a local trade union to the superior body cannot be viewed entirely in the same way as that of a local fraternal lodge to the larger order, particularly where no interference with the funds or other property of the local is involved. A local lodge of a fraternal order, except where insurance features are involved, may owe only sentimental allegiance to the larger body. A local labor union of the character in suit, however, owes the very privilege of its existence, and its members owe the very substantial right of belonging to union labor, with all the industrial benefits that such membership connotes, to their connection with the larger body, which in turn is affiliated with the powerful American Federation of Labor. Defendant claims that the unseemly conduct of the officers of Local 306 threatened its membership in, and affiliation with, the largest and most influential labor organization in the world. Surely a situation of this character created an emergency which authorized the suspension of the home rule provisions of the local and warranted the temporary removal of the officers. The interests of 1,200 union members in the peaceful pursuit of their daily vocation were imperiled by reason of what the superior body deemed the machinations of the local officers. A suspension of the local itself would have visited hardship upon innocent persons. The general executive board used its discretion in directing its remedy to what it considered the source of the evil, and removed the officers. Whether the emergency justified action so drastic only a trial can develop. But I view the action of the defendant as at least a

lawful exercise of the right of suspension. Beyond that I express no opinion, but await the decision of the trial court.

Under these circumstances, is plaintiff entitled to a temporary injunction which will virtually reinstate him in office? I think not. His suspension is not unlawful, and the trial of the issues will determine whether the constitution and by-laws of the organization have been duly followed in the final disposition of his case by the general executive board. And since he is out of office, at least for the time being, by lawful process, he cannot compel reinstatement at the present moment. But in view of the delay which might ensue in the ordinary course I shall, in denying the injunction, impose the condition of directing a trial on the 16th day of January, 1933. Meanwhile Local 306 is entitled to the election of temporary officers so that its affairs and funds may be duly administered. If the local had requested it I should have been pleased to appoint a high representative of the American Federation of Labor, as an impartial stakeholder, to act as receiver of the funds of the local pending the determination of the action. But in view of the imminence of the trial I do not regard this as necessary.

Motion for a temporary injunction denied on condition that the action be set down for trial on January 16, 1933, and on condition that defendant permit the election of temporary officers during the interim, to serve as permanent officers in the event of a final determination adverse to plaintiff. Settle order.